Kalmus v. Ballin.

---

JACOB KALMUS, appellant,

*v.*

LOUIS BALLIN et al., respondents.

---

ALECK KANTROWITCH et al., appellants,

*v.*

LOUIS BALLIN et al., respondents.

---

1. Since an assignee for the benefit of creditors may attack previous fraudulent transfers of property made by his assignor, when such property is necessary to satisfy the demands of creditors, he owes a duty to certain creditors to make such an attack, and, upon failure to perform such duty, a creditor to whom it is due may file a bill in his own name to avoid such transfers.

2. A creditor may thus supplant the assignee and assert his rights when the latter, by his connection with the fraud or otherwise, is disabled from asserting them, or when, upon proper notice, he has neglected or refused to perform his duty in that regard.

3. A mere request to take proceedings to set aside transfers of the assignor's property, will be insufficient. He must be informed of facts tending to show the transfers fraudulent and a reasonable ground for contest.

Kalmus v. Ballin.

4. If, upon request, the assignee declines to act on the ground that there are no funds to make the contest, it should appear, to justify a creditor' in supplanting the assignee in the litigation, that his excuse was false or that creditors had offered to supply the necessary funds or indemnify against loss.

5. The creditor who may demand performance of the assignee's duty and upon his default may act, is one who has presented his claim against the assignor, to the assignee, in the manner provided by the statute.

6. The orders appealed from were made upon affidavits.—*Held*, that the affidavits did not sufficiently establish the material allegations of fraud contained in the bill, to justify the appointment of a receiver and the peremptory sale of the disputed property.

On appeals from orders of the court of chancery in *Ballin et al.* v. *Morris et al.*

*Mr. Roderick B. Seymour* and *Mr. Gilbert Collins*, for the appellants.

*Mr. William P. Douglass*, for the respondents.

The opinion of the court was delivered by

MAGIE, J.

The bill in this cause was filed by Louis Ballin and others, partners, in behalf of themselves and other creditors of Hannah Morris. It was founded on an attachment sued out by them in the Hudson county circuit against her property. It averred, among other things, that Hannah Morris had, previous to the attachment, made a bill of sale of a stock of goods in her store to Jacob Kalmus, and that he had made three chattel mortgages on the goods—one to Aleck Kantrowitch, one to Leopold J. Liberman, and one to Charles Flauk. It charged that the bill of sale and mortgages were made without consideration and for the purpose of defrauding the creditors of Hannah Morris. The prayer was that they should be set aside and the property be subjected to the lien of the attachment or sold for the benefit of creditors.

The bill further showed that Hannah Morris had subsequently made an assignment, for the benefit of creditors, to one Lowy,

but he was not made a party. Kalmus and the three mort-gagees were made defendants.

Upon the bill with affidavits annexed being filed, an order to show cause was made, returnable December 27th, 1892, and a restraining order.

On December 27th, 1892, another order was made permitting respondents to amend their bill by striking out all the charges respecting the attachment (which had then been dissolved), and by adding a more particular statement of the assignment for the benefit of creditors; an averment that the assignee had been requested to take proceedings to set aside the bill of sale and mortgages and that he had refused, and an additional prayer for a declaratory decree that the title of the goods passed under the assignment to the assignee. It further permitted respondents to make the assignee a party defendant, and continued the order to show cause to January 3d, 1893. It also appointed a receiver of the goods, and directed him to dispose of them in the usual course of business at retail.

The order to show cause was brought to hearing on January 3d, 1893, upon the bill and the annexed affidavits and counter-affidavits and exhibits. The order was made absolute and the receiver continued.

On January 12th, 1893, upon a report of the receiver that the business was unprofitable and no insurance could be obtained upon the stock of goods, an order was made directing him to sell the stock as a whole.

Kalmus has appealed from the orders of December 27th, 1892, and of January 3d and January 12th, 1893.

Kantrowitch and the other mortgagees have appealed from the two last-mentioned orders.

All the appeals were argued together.

It is first contended that if it be assumed that respondents had a *status* to question the transactions which the bill sought to avoid, the allegations material to the relief prayed for were not so established by the affidavits as to justify the orders seiz-ing the disputed property and disposing of it by the receiver.

The propriety of these orders must be determined upon a consideration of the affidavits then before the court below.

A review in detail of the affidavits will serve no useful purpose, and it will be sufficient to indicate the conclusions reached.

In respect to the bill of sale, the charge is that it was without consideration and designed to defraud creditors. As to its consideration, unless the counter-affidavits are rejected as unworthy of credit, for which I can find no reason, it clearly appeared that the transfer to Kalmus was for a consideration of $6,000, which was no less effective because it was partly paid by a release of Hannah Morris from a debt due to him for borrowed money, and by the assumption of the payment of her note which he had endorsed for her accommodation, and which was then held by a bank which had discounted it, and partly by his undertaking to assume debts which she owed to Kantrowitch, Liberman and Flauk for borrowed money, and to pay her note, which Kantrowitch had endorsed for her accommodation, and which was also held by a bank which had discounted it. Nor do the affidavits show any such inadequacy of consideration as to justify an inference of fraud. Nor can there be discovered therefrom any ground for holding that the transfer was made to hinder, delay or defraud creditors within the prohibition of our statute. If the affidavits justify an inference that Hannah Morris made the transfer with that intent, it will not be sufficient to sustain this allegation of the bill. It must also appear that Kalmus participated in the fraudulent intent or knew at the time of facts and circumstances from which such intent was a natural and legal inference. *Tantum* v. *Green, 6 C. E. Gr. 364.* It is true that the effect of the transfer is to prefer creditors, but, in the absence of the restrictions of bankrupt or insolvent laws, debtors may prefer creditors and the latter may accept preferences without fraud.

In respect to Kalmus, the orders of January 3d and 12th were made without sufficient proof and should be reversed.

As to the chattel mortgages, appellants' case is still stronger. The affidavits annexed to the bill showed no fact from which any inference that they were without consideration or made to

defraud creditors could be drawn.    The counter-affidavits estab-
lish that they were given by Kalmus to secure his notes made in
pursuance of his agreement with Hannah Morris and substituted
for her obligations held by the mortgagees.    The consideration
of the mortgages was thus established, and there was nothing to
justify even a suspicion that the mortgagees conspired to defraud
the other creditors of their debtor.

Upon their appeal there should be a reversal of the same
orders.

It is next contended that respondents had no *status* to main-
tain this action and file the amended bill.    This contention is
applicable to the orders already considered, but particularly to
the order of December 27th, which permitted the amendment.

By such amendment, the whole scope and purpose of the bill
was altered.    From a bill to enforce the lien of an attachment,
interfered with by alleged fraudulent transfers, it became a bill
by particular creditors to establish the rights of an assignee
for the benefit of creditors upon such property as against such
transfers.

It was conceded in argument that the duty to attack fraudu-
lent transfers of the assignor's property primarily devolves
on the assignee.    In general, he cannot be supplanted in the
performance of that duty unless it is one which, from the cir-
cumstances, he cannot properly perform or which he will not
perform.    If there are no circumstances showing disability or
intention not to discharge his duty, the proper course is for a
creditor to whom he owes the duty to give him notice to per-
form it.    Then, if he refuses or neglects to do so, the creditor
may become an actor in a suit for the relief he thinks should be
afforded.    *Legendre* v. *Goodridge, 1 Dick. Ch. Rep. 419 ; Davis*
v. *White, 3 Dick. Ch. Rep. 22 ; S. C., 4 Dick. Ch Rep. 567.*

There was nothing in the bill or affidavits to indicate that
Lowy, the assignee, was disabled from attacking the transactions
which the bill seeks to avoid.    All that was before the court to
indicate his refusal or neglect to perform a duty in that regard
is contained in an affidavit of the solicitor.    He testifies that, on
a day not specified, he applied to the assignee to take proceed-

ings to have the bill of sale and mortgages set aside as fraudulent and that the assignee refused to comply with his request, alleging as an excuse, lack of funds to make such a contest.

This affidavit does not establish neglect or refusal on the part of the assignee. In the first place, it does not appear that he knew or was informed of any facts tending to show that the bill of sale and mortgages were fraudulent or that there was reasonable ground for a contest respecting them. It cannot be said that he neglected a duty of which he is not shown to have been aware. In the next place, the assignee was not bound to enter on such a contest at his own expense. He based his refusal on that ground, and such refusal was not wrongful unless it is made to appear that his excuse was false or that the creditor who applied to him offered in good faith to supply the necessary funds or to indemnify him against loss.

It is further contended that an application to an assignee in a case of this sort can only be made by creditors to whom he bears a relation which imposes upon him a duty in respect to them, and that respondents are not such creditors.

This contention is applicable to all the orders, for it involves the right of respondents to intervene in case of his refusing their request and to maintain such a bill.

The bill does not show that respondents had obtained judgment against Hannah Morris upon their claims or that they had presented their claims to the assignee under oath or affirmation, as required by section 3 of the Assignment act. *Rev. p. 37.* It was conceded in argument that, when amended, the bill was one filed by general creditors, whose claims had not been ascertained and fixed by judgment and had not been presented to the assignee, so as to entitle the claimants to share in the assets of the debtor when distributed by the assignee, and it is in the capacity of general creditors that respondents claim the right to compel the assignee to attack the alleged fraudulent transfers, and, upon his refusal, to attack them themselves.

The general rule settled in this state is that creditors only acquire a *status* to challenge a fraudulent transfer of property by their debtor by having first obtained a judgment or other lien

which, but for the transfer, would affect the property. Debts which are made liens by statute confer such *status* upon the creditor. *Haston* v. *Castner, 4 Stew. Eq. 697 ; Graham Button Co.* v. *Spielman, 5 Dick. Ch. Rep. 120 ; S. C., 5 Dick. Ch. Rep. 796.* Respondents do not fall within this rule, and their right to maintain this action arises, if it exists at all, from the fact that their debtor has made the assignment for the benefit of creditors.

The right of an assignee for the benefit of creditors to attack a previous fraudulent transfer of property by his assignor was first discussed in this state in the supreme court, and although the question was not necessarily presented, Mr. Justice Potts indicated his opinion to be that such an assignee could attack such fraudulent transfers, and because he was trustee for creditors they could compel him to do so. *Garretson* v. *Brown, 2 Dutch. 425.*

The question arose afterward in the court of chancery, and Chancellor Zabriskie held that an assignee could not attack the fraudulent transfers of his assignor, on the ground that the latter could not impeach the fraudulent transactions in which he took part and was incapable of giving authority to another to do so. *Van Keuren* v. *McLaughlin, 6 C. E. Gr. 163.* This case was followed by Vice-Chancellor Van Fleet in *Pillsbury* v. *Kingon, 4 Stew. Eq. 619.*

The last-named case was brought to this court by appeal. The case was one of a conveyance of lands by a debtor in fraud of creditors—an assignment for the benefit of creditors, under which creditors had presented their claims, and the property in the hands of the assignee was insufficient to pay such claims in full. The bill was filed by the assignee for the purpose of setting aside the fraudulent conveyance. The right of the assignee to attack the fraudulent transfer of property by his assignor was thus in question, and it was settled that he had such right. This was put on the ground that although the assignee was the grantee of one of the fraud-doers, yet he was to be regarded as the representative of creditors so far as to enable him to institute proceedings to set aside such a conveyance when the property

affected thereby is needed to satisfy creditors. The assignment was declared to create, *ipso facto,* a trust for the benefit of creditors. But it was also held that the fraudulent transaction would only be set aside so far as was necessary to satisfy the demands of creditors. *Pillsbury* v. *Kingon, 6 Stew. Eq. 287.*

Upon the doctrine thus settled, Lowy, the assignee in the case before us, became a trustee for the benefit of creditors and entitled to attack fraudulent transfers of property in the interest of creditors and to the extent necessary to satisfy their claims. But obviously he owed a duty in this regard only to the creditors with whom the trust relation was established. He is, no doubt, trustee for all creditors who may, within the prescribed time and in the required mode, present their claims, which thus become, *prima facie,* ascertained and fixed. But until a creditor presents his claim he is a stranger to the assignee and cannot impose on him the burden of a trust in his favor. When a creditor presents his claim, the trust relation with the assignee comes into existence. The assignee owes to such a creditor a duty to attack, on proper request, fraudulent transfers of property necessary to satisfy such claims. Upon the neglect or refusal of the assignee to comply with such a request, such a creditor acquires a ·*status* to act in the assignee's stead.

This conclusion is not, as argued, in conflict with previous decisions. In *Hays* v. *Doane, 3 Stock. 84,* the bill was filed by a judgment creditor to set aside a fraudulent assignment for the benefit of creditors and fraudulent transactions by the assignees: The creditor had not presented his claim to the assignees. The relief finally granted was confined to property which the assignees had improperly transferred, and the complainant's right to such relief was sustained, not as a general creditor, but as a creditor who had ascertained and fixed his debt by a judgment which would entitle him to any surplus after creditors who had presented their claims were satisfied.

In *Davis* v. *White, 4 Dick. Ch. Rep. 567,* the bill was also filed by a judgment creditor, and its purpose was to set aside various transfers of property and also an assignment for the benefit of creditors made by the debtor in fraud of creditors.

The defendants demurred to the bill and thereby admitted the fraudulent character of the transactions. This court, in affirming the decree overruling the demurrer, approved the course which Vice-Chancellor Van Fleet had indicated as proper to be taken, which was, not to set aside the assignment, though admitted to be fraudulent as to the complainant, but this approval was expressly put on the ground that the assignment ought to be preserved for the purpose of administering the equities of all the creditors.

The result is that respondents were not in a relation of trust with the assignee and not entitled to require him to attack the transactions set out in the bill. Respondents had, therefore, no *status* to attack the transactions.

All the orders must, therefore, be reversed.

*For reversal* — DEPUE, DIXON, GARRISON, REED, VAN SYCKEL, BOGERT, KRUEGER, PHELPS—8.

*For affirmance*—ABBETT, LIPPINCOTT—2.